JUNG H. PARK (SBN 209473)
ROPERS MAJESKI PC
801 South Figueroa St, Suite 2100
Los Angeles, CA 90017
Telephone: 213.312.2000
Facsimile: 213.312.2001
Email: jung.park@ropers.com

ROPERS MAJESKI PC
800 Third Avenue, 29th Floor
New York, NY 10022
Telephone: 212.668.5927
Facsimile: 212.668.5929

Attorneys for Plaintiff
Argonaut Insurance Company

[ADDITIONAL ATTORNEYS LISTED ON NEXT PAGE]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOMESITE INSURANCE COMPANY, ARGONAUT INSURANCE COMPANY, IRONSHORE INDEMNITY INC.,<br><br>Plaintiffs,<br><br>v.<br><br>NEWPORT GROUP HOLDINGS, L.P., NEWPORT GROUP, INC.,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |



ROPERS MAJESKI
A Professional Corporation
New York

JOSHUA B. SHAYNE (SBN 223408)
KAUFMAN BORGEEST & RYAN LLP
21700 Oxnard Street, Suite. 1450
Woodland Hills, CA 91367
Telephone: 818.961.8027
Facsimile: 818.880.0993
Email: jshayne@kbrlaw.com

Attorneys for Plaintiff
Ironshore Indemnity Inc

COREY KRUEGER (SBN 244989)
TRESSLER LLP
1255 Treat Boulevard, Suite. 300
Walnut Creek, CA 94597
Telephone: 310.203.4836
Email: ckrueger@tresslerllp.com

Attorneys for Plaintiff
Homesite Insurance Company

ROPERS MAJESKI
A Professional Corporation
New York

Plaintiffs HOMESITE INSURANCE COMPANY, ARGONAUT INSURANCE COMPANY, IRONSHORE INDEMNITY INC, bring this lawsuit for causes of action against Defendants NEWPORT GROUP HOLDINGS, L.P., NEWPORT GROUP, INC., and DOES 1 through 100, inclusive.

**BRIEF STATEMENT OF THE CASE**

**1.** This is an action for declaratory relief to determine the extent of coverage, if any, provided under certain insurance policies that were issued by the Plaintiffs Homesite Insurance Company, Argonaut Insurance Company, and Ironshore Indemnity Inc. (together, "Plaintiffs" or "Excess Insurers"), to Newport Group Holdings, L.P., ("**Named Insured**[1]") for costs incurred in the defense and resolution of a consolidated multidistrict class action lawsuit captioned, *In re: AME Church Employee Retirement Fund Litigation*, filed in the United States District Court for the Western District of Tennessee Western Division, MDL Docket No. 1:22-md-03035 (the "Consolidated Underlying Lawsuit").

2. The Consolidated Underlying Lawsuit consolidates several lawsuits in which the Insured Newport Group, Inc. ("Newport") is named as a defendant: (1) *Rev. Pearce Ewing v. Newport Group Inc., et al.*, filed in the United States District Court for the Western District of

[1] Bolded terms are as defined in the Primary Policy, the Indian Harbor Policy, the Homesite Policy, the Argo Policy, and/or the Ironshore Policy, each of which is defined below.

ROPERS MAJESKI
A Professional Corporation
New York

Tennessee on March 4, 2022, originally assigned Case No. 2:22-cv-02136 (the "*Ewing* Lawsuit"); (2) *Rev. Chares R. Jackson v. Newport Group, et al*., filed in the United States District Court for the Western District of Tennessee on March 22, 2022, originally assigned Case No. 2:22-cv-02174 (the "*Jackson* Lawsuit"); (3) *Russ, et al. v. Newport Group, Inc., et al*., filed in the United States District Court for the Middle District of Florida, originally assigned Case No. 3:22-cv-00375 (the "*Russ* Lawsuit"); (4) *Wade, et al. v. Newport Group, Inc. et al*., filed in the United States District Court for the Eastern District of Virginia on April 1, 2022, originally assigned Case No. 3:22-cv-00179 (the "*Wade* Lawsuit"); (5) *Carmichael, Jr., et al. v. Harris, et al*., filed in the United States District Court for the Middle District of North Carolina on May 19, 2022, originally assigned Case No. 1:22-cv-00386 (the "*Carmichael* Lawsuit"); and (6) *Alexander v. Harris, et al*., filed in the United States District Court for the District of Maryland on March 22, 2022, originally assigned Case No. 8:22-cv-00707 (the "*Alexander* Lawsuit").

3. In March 2022, the Named Insured and Newport (collectively, the "Defendants" or the "**Insureds**") provided Plaintiffs with notice of the *Ewing* Lawsuit and the *Jackson* Lawsuit. Newport was subsequently served process in connection with several related actions: the *Harris* Lawsuit, the *Russ* Lawsuit, the *Wade* Lawsuit, and the *Carmichael* Lawsuit. On or about June 2, 2022, these lawsuits were merged into the Consolidated Underlying Lawsuit.

4. In this declaratory judgment action, the Insurers seek a declaratory judgment determining that the proposed settlement ("Settlement") in the Consolidated Underlying Lawsuit is precluded under the Excess Policies (defined below) because: (i) the Prior Acts Exclusion in the Primary Policy (defined below) precludes coverage for all the alleged **Wrongful Acts** and **Interrelated Wrongful Acts** in the Consolidated Underlying Lawsuit including those both prior and subsequent to August 31, 2018; (ii) the Settlement is not reasonable; and (iii) to the extent the Settlement to be paid by Newport includes the return of Newport's fees, that portion of the proposed settlement is not **Loss** or is excluded from the definition of **Loss**.

## <u>JURISDICTION AND VENUE</u>

5. The Court has subject matter jurisdiction to grant the relief requested herein pursuant to 28 U.S.C. § 1332. Diversity jurisdiction exists between the parties and the claim at

ROPERS MAJESKI
A Professional Corporation
New York

issue exceeds $75,000.

6. There is an actual controversy between the parties regarding potential coverage for the Settlement under the Excess Policies.

7. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 as the Defendants' principal place of business is located in Walnut Creek, California.

**PARTIES**

8. The plaintiff Homesite Insurance Company ("Homesite") is an insurance company incorporated under the laws of Wisconsin with its principal place of business in Massachusetts.

9. The plaintiff Argonaut Insurance Company ("Argonaut") is an insurance company incorporated under the laws of Nebraska with its principal place of business in Illinois.

10. The plaintiff Ironshore Indemnity Inc. ("Ironshore") is an insurance company incorporated under the laws of Illinois with its principal place of business in Massachusetts.

11. The defendant Newport Group Holdings, L.P. is a limited partnership organized under the laws of Florida with its principal place of business in California.

12. The defendant Newport Group, Inc. is a corporation organized under the laws of Florida with its principal place of business in California.

**THE CONSOLIDATED UNDERLYING LAWSUIT**

13. The Consolidated Underlying Lawsuit is brought by Plaintiffs Reverend Pearce Ewing, Reverend Charles R. Jackson, Presiding Elder Cedric V. Alexander, Reverend Derrell Wade, Reverend Reuben J. Boyd, Presiding Elder Phillip Russ, IV, Reverend Marcius King, by and through Lynette Glenn, Power of Attorney, Reverend Matthew Ewing, Reverend A. Offord Carmichael, Jr., and Reverend Diane Conley (collectively the "Underlying Class Action Plaintiffs"), against Defendants African Methodist Episcopal Church Ministerial Retirement Annuity Plan (the "Plan"), Newport, Symetra Line Insurance Company ("Symetra"), the Estate of Rev. Dr. Jerome V. Harris, African Methodist Episcopal Church, Inc. ("AMEC" or "Church"), African Methodist Episcopal Church, AMEC Department of Retirement Services, AMEC General Board, AMEC Council of Bishops, Bishop Samuel L. Green, Sr., Bishop James Davis, Robert Eaton ("Eaton"), Financial Freedom Funds, LLC, Financial Freedom Group, Inc., Financial

ROPERS MAJESKI
A Professional Corporation
New York

Technologies, LLC, Motorskill Ventures, Inc., Motorskill Ventures I, L.P., Motorskill Asia Ventures 1, L.P., Rodney Brown and Company, Trinity Financial Consultants LLC, Sandra Harris, Day and Night Solar, LLC, Doe Corporations 1-10 and John Does 1-10 (collectively the "Underlying Defendants").

14. A Second Amended Complaint—currently the operative pleading in the Consolidated Underlying Lawsuit— was filed on August 29, 2024. A copy of the Second Amended Complaint is attached as Exhibit 1.

15. The Underlying Class Action Plaintiffs generally allege that the Underlying Defendants engaged in a decades-long conspiracy to control and influence the Plan and the fund of retirement assets associated with the Plan (the "Fund") to enrich themselves at the expense of the Underlying Class Action Plaintiffs and Class Members. The Underlying Class Action Plaintiffs and Class Members are ministers, bishops, officers, elders, and other employees (as well as their respective beneficiaries) of AMEC who are alleged to have either lost money that was, or should have been, invested in the Fund, or had diminished investment returns because of Underlying Defendants' alleged fraud and mismanagement of the Fund.

16. The Underlying Class Action Plaintiffs allege that Rev. Dr. Jerome V. Harris ("Harris") (who served as Executive Director of the AMEX Department of Retirement Services from 2000 until June 2021) and Eaton (who served as Harris' investment advisor), with the assistance of Newport (the Fund's third-party administrator) and Symetra (which managed Fund assets), engaged in self-dealing transactions resulting in the enrichment of the conspirators and loss of Fund assets. The Underlying Class Action Plaintiffs allege that the Underlying Defendants' misappropriation and mismanagement of the Fund deprived the Fund of reasonable growth and investment returns for almost two decades, resulting in alleged losses in the range of $250,000,000. The Underlying Class Action Plaintiffs allege that Newport and Symetra specifically knew that certain Fund investments were imprudent and that Fund managers were engaging in self-dealing and that Newport and Symetra aided and abetted, or did nothing to prevent, the alleged fraud.

17. The Underlying Class Action Plaintiffs allege that after the AMEC General Board opened its investment account with Symetra in or about December 2001 at Harris and Eaton's

ROPERS MAJESKI
A Professional Corporation
New York

recommendation, AMEC engaged American Express Tax & Business Services ("AMEX TBS") to operate as an independent third-party administrator of the Plan. In mid-2005, H&R Block acquired AMEX TBS and rebranded it under the name RSM McGladrey ("RSM"). RSM was then sold to an entity called Pension Specialist, Inc., which was later rebranded as Verisite, which itself merged with Newport in 2014. The Underlying Class Action Plaintiffs allege that Newport is the successor to AMEX TBS such that all relevant liabilities related to the third-party administration of the Plan ultimately ended up with Newport.

18. The Underlying Class Action Plaintiffs allege that Newport, Harris, Eaton, and Symetra conspired to misappropriate funds and defraud the Underlying Class Action Plaintiffs, and that they managed the Fund for their own benefit and to the detriment of the Underlying Class Action Plaintiffs and the Plan by: steering Fund assets into low performing Symetra annuities resulting in commissions to Eaton and a cheap source of capital for Symetra with minimal obligations to generate returns for the Fund; paying inflated administrative fees to Harris as an inducement for him to keep Fund assets in Symetra annuities; rotating Fund assets through a series of corporate entities controlled by Harris and Eaton which allowed them to skim funds for fraudulent and/or illusory services; steering Fund assets into the Motorskill Entities, which were allegedly controlled by Harris, in exchange for commissions paid to Eaton and Harris; permitting Eaton and Harris to engage in obvious prohibited investment and loan transactions; covertly assisting Harris's reelection efforts as a Fund trustee to prolong the corrupt arrangement between Harris, Eaton, Newport, and Symetra; and using Newport and Symetra to make fraudulent and unsupported claims about the value of the Fund and the Fund's investment strategies so that they appeared to come from financial professionals rather than Harris and Eaton themselves.

19. Newport, specifically, is alleged to have: colluded with Harris regarding the erroneous interpretation of Plan documents allowing him to take greater administrative fees than he was entitled to; assisted Harris in making fraudulent withdrawals of fund assets; colluded with Harris to falsify the valuation of Fund investments, particularly with respect to Fund investments in the Motorskill Entities; falsified information provided to Fund beneficiaries and management regarding Fund asset and investment valuations; manipulated financial statements to allow Harris

ROPERS MAJESKI
A Professional Corporation
New York

to withdraw funds from the Plan as loans without properly reporting them to Class Members; engaged in activity to cover-up impermissible transactions by Harris; provided advice to Harris on methods to engage in impermissible transactions and underperforming investments to Harris' benefit and the Fund's detriment; processed withdrawals, disbursements, and other Fund transactions that Newport knew, or should have known, were impermissible and/or fraudulent; and overcharged the Plan for Newport's own administration services.

20. The Underlying Class Action Plaintiffs specify that the Fund is not governed by ERISA—as a church plan, the Fund is specifically exempted from ERISA and its requirements. Accordingly, the Underlying Class Action Plaintiffs do not assert ERISA Claims in the Consolidated Underlying Lawsuit. Instead, the claims are based on Defendants' alleged fiduciary and contractual obligations. However, the Underlying Class Action Plaintiffs allege that because AMEC agreed in written plan documents to govern the plan in accordance with the requirements of ERISA, AMEC should be held to ERISA standards with respect to their management of the Plan and its assets, and thus the Underlying Class Action Plaintiffs nonetheless should be entitled ERISA remedies.

21. The Second Amended Complaint asserts causes of action against Newport for: (i) breach of fiduciary duty; (ii) violation of Tennessee Uniform Trust Code for breach of trust and misappropriation of trust funds; (iii) fraudulent concealment; (iv) fraudulent misrepresentation; (v) civil conspiracy; (vi) aiding and abetting breach of fiduciary duty; and (vii) professional negligence, and seeks declaratory and injunctive relief, consequential damages, punitive damages, and attorneys' fees and costs.

22. AMEC and the Plan also asserted cross-claims against Newport and other Underlying Defendants making similar allegations as Plaintiffs and claiming that the Church has been harmed by the supposed misconduct. AMEC's Second Amended Cross-Complaint ("Cross-Claims") asserts claims against Newport for (1) negligence; (2) breach of fiduciary duty; (3) negligent misrepresentation; (4) fraudulent concealment; (5) civil conspiracy to commit conversion; (6) civil conspiracy to commit intentional misrepresentation; (7) civil conspiracy to

ROPERS MAJESKI
A Professional Corporation
New York

commit constructive fraud; (8) professional negligence; and (9) aiding and abetting breach of fiduciary duty. A copy of the Cross-Claims is attached as Exhibit 2.

23. On or about August 24, 2024, the Underlying Class Action Plaintiffs settled with AMEC, the Plan, AMEC Department of Retirement Services, AMEC General Board, and AMEC Council of Bishops (the "AMEC Defendants") for $20 million.

## THE PROPOSED SETTLEMENT

24. Plaintiffs, as well as non-party Columbia Casualty Company ("Columbia") and non-party Indian Harbor Insurance Company ("Indian Harbor") participated in two mediation sessions including the session on January 31, 2025 which led to the Mediator's Proposal recommending that Newport resolve its potential exposure in the Consolidated Underlying Lawsuit for a payment of $40 million.

25. Pursuant to the Confidential Term Sheet entered into on or about February 4, 2025, the Settlement purports to resolve the claims against Newport asserted by the Underlying Class Action Plaintiffs, as well as the Cross-Claims asserted by AMEC and the Plan.

26. While the Plaintiffs agreed to attend the mediation for information purposes, the Plaintiffs also agreed not to raise lack of consent as a defense to coverage for the Settlement so that Newport could proceed with the Settlement; however, the Plaintiffs expressly reserved all of their remaining rights under the policies and at law including the right to raise whether the Settlement amount was reasonable.

## THE POLICIES

27. Non-party Columbia[2] issued an Investment Management Liability Solutions Policy Number 652186403 to Newport Group Holdings, L.P. (the "Primary Policy") for the Policy Period of September 30, 2021 to September 20, 2022. The Primary Policy has a $5 million aggregate Limit of Liability and an applicable per Claim Retention of $1,250,000. A copy of the Primary Policy is attached hereto as Exhibit 3.

[2] By letter dated February 6, 2024, Columbia agreed to advance **Defense Costs** subject to a full reservation of rights.

28. The Insuring Agreement of the Primary Policy's Investment Advisor Professional Liability Coverage Part (the "IAPL Coverage Part") states that the "Insurer shall pay **Loss** on behalf of an **Insured** resulting from any **Claim** first made against such **Insured** during the **Policy Period."**

29. The definition of **Claim** in Section II of the General Terms and Conditions ("GTC") Section of the Primary Policy includes a civil proceeding such as the Consolidated Underlying Lawsuit.

30. The definition of **Interrelated Wrongful Acts** is defined in Section II of the GTC Section of the Primary Policy as **"**any **Wrongful Acts** that are causally connected by reason of any common fact, circumstance, situation, transaction, or event or series of common facts, circumstances, situations, transactions, or events."

31. Pursuant to the Special Definitions section of Primary Policy's IAPL Coverage Part, and as further amended by Endorsement No. 14, **"Loss** other than **Defense Costs** shall not include" *inter alia* "(c) matters which are deemed uninsurable under the law pursuant to which this Policy shall be construed" or "(f) the return of any fees, expenses, or charges."

32. Pursuant to the Special Definitions section of Primary Policy's IAPL Coverage Part, **Wrongful Act** is defined as follows:

> **Wrongful Act** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by an **Insured** (or any entity or natural person for whose acts the Insured is contractually or legally liable) while acting in such capacity, in the rendering of, or failing to render **Professional Services**.

33. Pursuant to Endorsement No. 6 of the Primary Policy, GTC Section III, General Policy Exclusions is amended to add the following new exclusion ("Prior Acts Exclusion"):

> The Insurer shall not be liable for **Loss** under this Policy in connection with any **Claim:**
>
> based upon, directly or indirectly arising out of, or in any way involving:
>
> 1. any **Wrongful Act** that occurred prior to the Prior Acts Date set forth below; or

ROPERS MAJESKI
A Professional Corporation
New York

2. any other **Wrongful Act**, whenever occurring, which together with a **Wrongful Act** described in 1 above, would constitute **Interrelated Wrongful Acts**.

Prior Acts Date: 8/31/2018

34. Section V.4 (Allocation) of the GTC Section of the Primary Policy provides as follows:

> The Insurer and the **Insureds** shall use their best efforts to determine a fair and proper allocation between **Loss** and any amount that is not covered **Loss** or any other amount, based on the relative legal and financial exposures of the covered parties to the covered matters. Failure of the Insurer and the **Insured** to agree to an allocation determination shall not preclude the Insurer from advancing **Defense Costs** in accordance with paragraph 3 in Section IV, Limit of Liability/Retention/Indemnification/ Advancement of Defense Costs.
>
> If the **Insureds** and the Insurer cannot, after exerting their best efforts, agree on an allocation of insured and uninsured **Defense Costs**, the Insurer then shall advance the percentage of **Defense Costs** which the Insurer states to be fair and proper until a different allocation is agreed upon or determined pursuant to the provisions of this Policy and applicable law.
>
> Any allocation or advancement of **Defense Costs** shall not apply to or create any presumption with respect to the allocation of other **Loss**.

35. Section XI.1.(a) (Acquisition or Creation of a Subsidiary) of the GTC Section of the Primary Policy provides as follows:

i. Subject to paragraph ii. below, if before or during the **Policy Period** an **Insured Entity** acquires or creates **Management Control** of another entity, such that the acquired or newly created entity becomes a **Subsidiary**, then such **Subsidiary** and the **Insured Persons** thereof, shall be **Insureds** only with respect to **Wrongful Acts** occurring after such acquisition or creation.

…

iii. There shall be no coverage under this Policy for any **Wrongful Act** or **Interrelated Wrongful Act** by any **Subsidiary** or by any persons or entities considered to be **Insureds** in i. or ii above, where such **Wrongful Act** or **Interrelated Wrongful Act** occurred in whole or in part before the effective date of the acquisition or creation of the **Subsidiary** by the **Insured Entity.**



ROPERS MAJESKI A Professional Corporation New York

ROPERS MAJESKI
A Professional Corporation
New York

36. Non-party Indian Harbor[3] issued Policy No. MPE903759603 (the "Indian Harbor Policy") to Newport Group Holdings, L.P. for the Policy Period of September 30, 2021 to September 30, 2022. Coverage under the Indian Harbor Policy is subject to a Limit of Liability of $5,000,000 excess of the coverage provided under the Primary Policy plus the applicable retention. Subject to its terms, conditions, exclusions and endorsements, the Indian Harbor Policy generally follows the form of the terms, conditions, and exclusions contained in the Primary Policy, including but not limited to the Prior Acts Exclusion. A copy of the Indian Harbor Policy is attached hereto as Exhibit 4.

37. Homesite issued Policy No. EEO-144162048-00 (the "Homesite Policy") to Newport Group Holdings, L.P. for the Policy Period of September 30, 2021 to September 30, 2022. Coverage under the Homesite Policy is subject to a Limit of Liability of $5,000,000 excess of the coverage provided under the Primary Policy and the Indian Harbor Policy, plus the applicable retention. Subject to its terms, conditions, exclusions and endorsements, the Homesite Policy generally follows the form of the terms, conditions, and exclusions contained in the Primary Policy, including but not limited to the Prior Acts Exclusion. A copy of the Homesite Policy is attached hereto as Exhibit 5.

38. Argonaut issued Policy No. MLX4209382-4 (the "Argo Policy") to Newport Group Holdings, L.P. for the Policy Period of September 30, 2021 to September 30, 2022. Coverage under the Argo Policy is subject to a Limit of Liability of $5,000,000 excess of the coverage provided under the Primary Policy, the Indian Harbor Policy, and the Homesite Policy, plus the applicable retention. Subject to its terms, conditions, exclusions and endorsements, the Argo Policy generally follows the form of the terms, conditions, and exclusions contained in the Primary Policy, including but not limited to the Prior Acts Exclusion. A copy of the Argo Policy is attached hereto as Exhibit 6.

---

[3] By letter dated December 12, 2024, Indian Harbor agreed to pay up to its $5,000,000 policy limits to fund the Settlement subject to a full and complete reservation of rights, including, as permitted by California law under *Blue Ridge Ins. Co. v. Jacobsen*, 25 Cal. 4th 489 (2001), the right to seek recovery of the settlement payment from the **Named Insured** and any other **Insured** under the Indian Harbor Policy for the settlement of **Claims** that are not covered under or are excluded from coverage under the policy. Indian Harbor further advised that it intends to pursue the **Named Insured** and any other **Insured** under the policy, as the California Supreme Court has authorized in *Blue Ridge*, to recover any settlement funds paid that are not covered under or are excluded from coverage under the policy.

39. Ironshore issued Policy No. IA6NAB3SYH002 (the "Ironshore Policy") to Newport Group Holdings, L.P. for the Policy Period of September 30, 2021 to September 30, 2022. Coverage under the Ironshore Policy is subject to a Limit of Liability of $5,000,000 excess of the coverage provided under the Primary Policy, the Indian Harbor Policy, the Homesite Policy, and the Argo Policy, plus the applicable retention. Subject to its terms, conditions, exclusions and endorsements, the Ironshore Policy generally follows the form of the terms, conditions, and exclusions contained in the Primary Policy, including but not limited to the Prior Acts Exclusion. A copy of the Ironshore Policy is attached hereto as Exhibit 7.

40. Together, the policies of Homesite, Argonaut, and Ironshore are referred to as the "Excess Policies."

## THE INSURERS' COVERAGE POSITION

41. The Consolidated Underlying Lawsuit is a **Claim** against **Insureds** for a **Wrongful Act** for the purposes of triggering coverage under the IAPL Coverage Part of the Primary Policy.

42. Defendant Newport Group, Inc. is a **Subsidiary** of the **Named Insured,** Newport Group Holdings, LP, and therefore is an **Insured** under the Policy.

43. The various lawsuits referenced above have been consolidated, as they involve common facts (the same **Wrongful Acts** or **Interrelated Wrongful Acts**) regarding Newport's conduct in the administration of the Fund. Newport was first served with the *Ewing* Lawsuit on March 8, 2022, during the **Policy Period**. Accordingly, the Consolidated Underlying Lawsuit constitutes a **Claim** first made during the **Policy Period**.

44. The Excess Insurers contend that all of the **Wrongful Acts** alleged in the Consolidated Underlying Lawsuit are precluded from coverage pursuant to the Prior Acts Exclusion.

45. The Consolidated Underlying Lawsuit alleges that Newport's role in the alleged **Wrongful Acts** began in February 2005[4] when Newport allegedly advised and assisted Harris in extracting money from the Fund through overpayment of administrative fees to Harris. Newport's

---

[4] While Verisite and Newport merged in 2014, as set forth in paragraph 17, *supra*, the Consolidated Underlying Lawsuit nonetheless makes allegations against Newport going back as early as 2005.



ROPERS MAJESKI A Professional Corporation New York

ROPERS MAJESKI
A Professional Corporation
New York

alleged participation in Harris' fraud and conspiracy to divert and misappropriate Fund assets continued at least until Harris' retirement as the Fund's executive director in June 2021. As such, pursuant to the Prior Acts Exclusion, there is no coverage for the Consolidated Underlying Lawsuit because the **Claim** is based upon, indirectly or directly arises out of, or in any way involves any **Wrongful Act** that occurred prior to August 31, 2018 (the "Prior Acts Date") or any other **Wrongful Act** occurring at any time that, together with a **Wrongful Act** occurring prior to the Prior Acts Date, constitutes **Interrelated Wrongful Acts**. For the same reasoning, the Settlement is also similarly excluded from coverage.

46. The Excess Insurers contend that to the extent it is determined by this Court that there are alleged **Wrongful Acts** that are not **Interrelated Wrongful Acts** to the **Wrongful Acts** that pre-date August 30, 2018, the relative legal and financial exposure of any covered **Wrongful Acts** are minimal such that pursuant to Section V.4 of the GTC Section of the Primary Policy (Allocation) none of the Excess Policies at issue would be implicated because any covered **Loss** resulting from said **Wrongful Acts** would not reach or attach any of the Excess Policies.

47. The Excess Insurers also contend that regardless of the Allocation provision, the Settlement is not reasonable given the fair evaluation of the legal and financial exposure of Newport as alleged in the Consolidated Underlying Lawsuit and the Cross-Claims. The Underlying Class Action Plaintiffs already recovered or will recover $20 million from the AMEC Defendants who were the actual Trustees of the Plan. Moreover, Newport had no responsibility for overseeing the Plan's assets, advising on the Plan's investments, or supervising Harris. Nor is it alleged that Newport profited from the alleged scheme. Rather, the theory of liability against Newport is that Newport somehow should have uncovered Harris's fraud or prevented it from occurring. But, it was the AMEC Defendants who had the responsibility to oversee and monitor Harris. Under the Service Agreement (attached as Exhibit 8), Newport had no independent obligation to verify the information provided by AMEC concerning the Plan's participants, assets or investments. Newport's role was to perform calculations based on information from AMEC to reconcile the Plan's assets on a quarterly basis and prepare Plan participant statements. Nevertheless, Newport's Settlement is twice that of the AMEC Defendants.

48. The Excess Insurers also contend that the Settlement is not reasonable to the extent Newport is being held liable for the acts and/or omissions of entities (i.e. AMEX TBS, RSM, Pension Specialist, Inc, Verisite) before they were acquired by or merged into Newport in 2014.

49. The Excess Insurers also contend that there is no coverage under the Excess Policies to the extent the Settlement includes the return of Newport's administrative fees that were charged against the Plan. Such damages do not qualify as **Loss** or is excluded from the definition of **Loss**

50. Upon information and belief, the Underlying Class Action Plaintiffs are still arbitrating their claims against Symetra, and litigating their claims against Underlying Defendants Scott Bartholomaus, Trinity Financial Consultants, LLC, Sandra Harris, Financial Technologies, LLC, Day and Night Solar, LLC, Financial Freedom Funds, LLC, Jerome v. Harris, Bishop Samuel L. Green, Sr., Estate of Bishop McKinley Young, and Bishop James Davis. It is undisputed that the main bad actor was Harris who is now deceased, and his close friend Eaton.

**FIRST CAUSE OF ACTION**

**(Declaratory Judgment – Prior Acts Exclusion**

**Against All Defendants and DOES 1 through 100, inclusive)**

51. Plaintiffs reallege and incorporate herein by reference each and every allegation and statement contained in the prior paragraphs.

52. The Excess Policies are subject to additional terms, conditions, exclusions, limitations, applicable law and public policy, which wholly preclude or limit Plaintiffs' duty to indemnify any **Insured** for any amounts owed by such **Insured** in connection with the defense or resolution of the Consolidated Underlying Lawsuit.

53. The Prior Acts Exclusion bars coverage for the **Defense Costs** and Settlement of the Consolidated Underlying Lawsuit. The vast majority, if not all, of the alleged **Wrongful Acts** occurred prior to the Prior Acts Date and while there are a few alleged **Wrongful Acts** which Newport contends occurred after the Primary Policy's Prior Acts Date, each are causally connected by common facts such that they constitute **Interrelated Wrongful Acts** and are likewise excluded by the terms of the Primary Policy's Prior Acts Exclusion, to which the Excess Policies follow form.

ROPERS MAJESKI
A Professional Corporation
New York

54. Additionally, to the extent Newport contends that the Consolidated Underlying Lawsuit allege discrete **Wrongful Acts** that occurred subsequent to the Primary Policy's Prior Acts Date that do not constitute **Interrelated Wrongful Acts** (which the Excess Insurers dispute), any damages which might arise from such **Wrongful Acts** would be negligible and would not attach or impact the Excess Policies under any reasonable and appropriate Allocation.

55. As such, coverage for the Consolidated Underlying Lawsuit and the Settlement are precluded by the Prior Acts Exclusion in the Primary Policy, to which the Excess Policies follow form.

**SECOND CAUSE OF ACTION**

**(Declaratory Judgment – Settlement is Not Reasonable**

**Against All Defendants and DOES 1 through 100, inclusive)**

56. Plaintiffs reallege and incorporate herein by reference each and every allegation and statement contained in the prior paragraphs.

57. The Excess Policies are subject to additional terms, conditions, exclusions, limitations, applicable law and public policy, which wholly preclude or limit Plaintiffs' duty to indemnify any **Insured** for any amounts owed by such **Insured** in connection with the Settlement.

58. Section V.2. of the GTC Section of the Primary Policy provides as follows:

> Subject to the next paragraph, the **Insureds** shall not agree to any settlement, make any offer of settlement, stipulate to any judgment, incur any **Defense Costs**, **Loss, Shareholder Derivative Investigative Costs**, **Extradition Costs**, **Facilitation Costs**, **Non-Party Witness Fees**, or any similar cost or expense, or admit any liability or assume any contractual obligation, without the Insurer's prior written consent, such consent not to be unreasonably withheld.
>
> Notwithstanding the above, if the **Insureds** are able to settle all **Claims**, including all **Interrelated Wrongful Acts**, for an aggregate amount, including **Defense Costs**, not exceeding the applicable Retention, the Insurer's consent shall not be required for the settlement of such **Claims.**

59. While the Excess Insurers agreed not to raise lack of consent as a defense to settlement so that Newport could proceed with the Settlement, all of the Excess Insurers expressly

reserved all of their remaining rights under the policies and at law including the right to object to the reasonableness of the Settlement.

60. The Settlement is not reasonable given any fair evaluation of the legal and financial exposure of Newport as alleged in the Consolidated Underlying Lawsuit and the Cross-Claims.

61. The Underlying Class Action Plaintiffs already recovered or will recover $20 million from the AMEC Defendants, the parties who were the undisputed fiduciaries of the Plan. There remain additional Underlying Defendants against whom the Underlying Class Action Plaintiffs are still litigating/arbitrating against.

62. Given the damages at issue, the settlement with the AMEC Defendants, and the limited legal and financial exposure to Newport, the Settlement is unreasonable.

63. The Settlement is also not reasonable to the extent Newport is being held liable for the acts and/or omissions of non-Insured entities.

64. As such, coverage for the Settlement is also precluded due to its unreasonableness.

**<u>THIRD CAUSE OF ACTION</u>**

**(Declaratory Judgment – Uninsurable Loss**

**Against All Defendants and DOES 1 through 100, inclusive)**

65. Plaintiffs reallege and incorporate herein by reference each and every allegation and statement contained in the prior paragraphs.

66. The Excess Policies are subject to additional terms, conditions, exclusions, limitations, applicable law and public policy, which wholly preclude or limit Plaintiffs' duty to indemnify any **Insured** for any amounts owed by such **Insured** in connection with the defense or resolution of the Consolidated Underlying Lawsuit.

67. Covered **Loss** as defined in the Primary Policy, to which the Excess Policies follow form, does not include that portion of any amounts paid by the **Insureds** in connection with the defense or resolution of the Consolidated Underlying Lawsuit that are uninsurable under the law pursuant to which the Excess Policies are construed.

68. To the extent the Settlement was based on the return to the Plan of their administrative fees, such amounts constitute disgorgement, are uninsurable as a matter of law, and do not qualify as **Loss** under the Excess Policies.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs respectfully request that the Court enter a declaratory judgment in their favor, determining that none of the Excess Policies provide coverage for any amounts incurred by the Defendants to defend or resolve the Consolidated Underlying Lawsuit, and that they be awarded their costs and attorneys' fees of this action and whatever other or additional relief the Court deems to be appropriate.

Dated: March 18, 2025

ROPERS MAJESKI PC

By: s/ Jung H. Park
JUNG H. PARK
Attorneys for Plaintiff
Argonaut Insurance Company

KAUFMAN BORGEEST & RYAN LLP

By: s/ Joshua B. Shayne
JOSHUA B. SHAYNE
Attorneys for Plaintiff
Ironshore Indemnity Inc

TRESSLER LLP

By: s/ Corey Krueger
COREY KRUEGER
Attorneys for Plaintiff
Homesite Insurance Company

ROPERS MAJESKI
A Professional Corporation
New York