UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HOMESITE INSURANCE COMPANY, et al.,

Plaintiffs,

v.

NEWPORT GROUP HOLDINGS, L.P., et al.,

Defendants.

Case No. 25-cv-02626-AGT

**ORDER RE: SUMMARY JUDGMENT AND SEALING**

Re: Dkt. Nos. 59, 92, 93, 97, 98, 99, 109

Plaintiffs and counter-defendants Homesite Insurance Company, Argonaut Insurance Company, and Ironshore Indemnity Inc. (collectively, the Insurers) move for summary judgment. Dkt. 93. Defendants and counter-claimants Newport Group Holdings, L.P. and Newport Group, Inc. (together, Newport) move for partial summary judgment. Dkt. 59. After hearing oral argument on July 10, 2026, and having considered the supplemental briefing, the Court now grants the Insurers' motion and denies Newport's motion.

The Court assumes the parties are familiar with the background facts and will not summarize in detail all of the facts in this order. The parties agree that the Court may take allegations in the operative complaint in the underlying litigation as true with respect to

wrongful acts.[1] Dkt. 108, hearing transcript at 16–17, 22, & 39–40.[2]

## I. The Prior Acts Exclusion Bars Coverage

Reviewing the Insurers' motion, the crux of the parties' disagreement is whether the Prior Acts Exclusion in the Primary Policy (filed at dkt. 59-3) bars coverage. The Insurers argue that it does. Dkt. 93. Newport, the insured entity, claims that it doesn't. Dkt. 96. The Court agrees with the Insurers.

The Prior Acts Exclusion disallows coverage for acts connected with "1. any Wrongful Act that occurred prior to [August 31, 2018]; or 2. any other Wrongful Act, whenever occurring, which together with a Wrongful Act described in 1 above, would constitute Interrelated Wrongful Acts." Dkt. 59-3 at 28.

When defining Interrelated Wrongful Acts, the Primary Policy incorporates the definition of Wrongful Acts. Interposing the Wrongful Acts definition into Interrelated Wrongful Acts, the relevant sections read: "[any actual or alleged error[s], misstatement[s], misleading statement[s], act[s], omission[s], neglect[s], or breach[es] of duty] that are causally connected by reason of any common fact, circumstance, situation, transaction, or event or series of common facts, circumstances, situations, transactions, or events." Dkt. 59-3 at 8 & 21.

### A. Allegations Are Sufficient to Support Interrelated Wrongful Acts

First, the parties dispute whether it's sufficient for Interrelated Wrongful Acts to be supported by allegations or facts are required. *See, e.g.*, dkt. 108, transcript of oral argument

---

[1] This case involves insurance coverage for claims raised in connection with an underlying lawsuit, *In re AME Church Employee Retirement Fund Litigation*, No. 22-md-03035 (W.D. Tenn.).

[2] Citations to page numbers in this order correspond to the ECF-generated page numbers at the top of each docketed page.

at 39–49. In supplemental briefing, Newport posits that Interrelated Wrongful Acts are two actual or alleged errors which are causally connected by facts, not allegations. Dkt. 111 at 3. The Insurers argue that allegations are enough. Dkt. 110 at 5.

Allegations are sufficient to support Interrelated Wrongful Acts. Newport concedes that allegations are sufficient to support Wrongful Acts. Dkt. 108, transcript of oral argument at 40 & 46. It would be illogical for the Primary Policy to allow for Wrongful Acts based on allegations, but require actual proof for Interrelated Wrongful Acts. That would seem to negate the inclusion of "actual or alleged" in the Wrongful Acts definition as pertaining to Interrelated Wrongful Acts. And that's a problem because the Primary Policy explicitly incorporates Wrongful Acts when defining Interrelated Wrongful Acts.

As the Insurers highlight in supplemental briefing, dkt. 110 at 6, "when a policy defines [a] term, that definition controls." *Tustin Field Gas & Food, Inc. v. Mid-Century Ins. Co.,* 219 Cal. Rptr. 3d 909, 914 (Cal. Ct. App. 2017) (citing *Rosen v. State Farm Gen. Ins. Co.*, 70 P.3d 351, 353–54 (Cal. 2003)).[3] Furthermore, a contract must be read as a whole "so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civ. Code § 1641.

Moreover, Newport's authorities don't support its position. In *Medeanalytics, Inc. v. Federal Insurance Company*, the court found that (for an exclusion to apply) the defendant insurance company needed conclusive evidence establishing potential liability. No. 15-CV-04101-JST, 2016 WL 687976, at *6 (N.D. Cal. Feb. 19, 2016). Allegations were insufficient. *Id.* at *5. The exclusion language at issue, however, did not include "actual or alleged."

[3] It's undisputed that California law applies. *See* dkts. 93 (Insurers' motion) & 96 (opposition) (both applying California law).

Instead, it merely stated that, "[t]his insurance does not apply to . . . personal injury arising out of breach of contract." *Id.* (alteration in original). Relying on that, the *Medeanalytics* court reasoned that — if the defendant insurer wanted to include "actual or alleged" — then it knew how to do so and didn't. *Id.* But here, "actual or alleged" is incorporated into the Interrelated Wrongful Acts definition by reference.[4]

In sum, Interrelated Wrongful Acts need to be "causally connected by reason of any . . . fact, circumstance, situation, transaction, or event or series of . . . facts, circumstances, situations, transactions, or events" in common. Those common facts could be actual or alleged.

### B. Interrelated Wrongful Acts Exist Here

The *In re AME Church* operative complaint alleges that Newport entered a conspiracy starting in 2001 to misappropriate funds, defraud, and manage the African Methodist Episcopal Church Ministerial Retirement Annuity Plan (the Plan) for its own benefit. Dkt. 59-2 (second amended class action complaint) ¶ 147.

Relevant here, Newport issued earnings reports. *Id.* ¶ 620, ¶¶ 843–47. The earnings reports at issue pertain to Motorskill Ventures, Inc.; Motorskill Ventures I, L.P.; and Motorskill Asia Ventures I, L.P. (collectively, Motorskill) *Id.* ¶¶ 69–72, 188–90. Allegedly,

[4] *Opus Bank v. Liberty Insurance Underwriters, Inc.* similarly doesn't help Newport. No. 13-CV-00469, 2013 WL 11037456 (C.D. Cal. June 26, 2013), *aff'd,* 621 Fed. App'x 405 (9th Cir. 2015). Newport cites *Opus Bank*, arguing that that court required the defendant insurer to examine the actual facts underlying the claim. Dkt. 111 at 4. That district court found a prior acts exclusion provision did not bar coverage. *Opus Bank*, 2013 WL 11037456 at *6. But the opinion did not distinguish between actual facts and allegations. *See, e.g.*, *id.* at *5 ("it is clear that the *underlying facts* in the Demand Letter *allege* a retaliation claim that is potentially based on conduct completely separate and independent from the *alleged* fraudulent scheme") (emphasis added). The court found that the defendant insurers had neglected to review all allegations, and only focused on those allegations that might bar coverage. *See id.* Applying the proper analysis, the allegations in the demand letter did give rise to potential coverage. *Id.* at *6.

Motorskill benefited from more than $36 million in Plan assets between 2005 to 2016. *Id.* ¶ 188. At first, those earnings reports regarding Motorskill's values were based on written statements, statements which allegedly did not support Newport's valuations. *Id.* ¶¶ 308–334, ¶ 631, ¶¶ 742–51, ¶ 804, ¶ 826. Starting in 2019, it is undisputed that Newport continued to issue earnings reports regarding the Plan's investment in Motorskill without any written statements on which to rely. *Id.* ¶¶ 190–91, ¶ 384, ¶ 714, ¶ 804, ¶ 826.

The parties dispute whether Newport's issuance of reports after August 31, 2018, is interrelated with reports issued prior to that date. Dkts. 93 & 96. If so, then the Prior Acts Exclusion applies and Newport is without coverage.

The determining factor is whether the acts are sufficiently "causally connected." No party argues that the provision is ambiguous, though they disagree regarding how to define "causally connected."

### 1. Cases Relying on "Related" Are Distinguishable

The Insurers argue in their moving papers, dkt. 93 at 18–21, that the term "related" is broadly construed and encompasses both logical and causal relationships, relying on *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Insurance Co.*, and its progeny. 855 P.2d 1263 (Cal. 1993). So, all the wrongful acts alleged in the underlying lawsuit are logically and causally connected, interrelated, and deemed to have occurred prior to August 31, 2018. Dkt. 93 at 18–21.

Newport responds correctly that the Insurers are using the wrong standard. Dkt. 96 at 11–13. The policy at issue in *Bay Cities* didn't include "causally connected" but instead read, "[t]wo or more claims arising out of a single act, error or omission or *a series of related acts, errors or omissions* shall be treated as a single claim." 855 P.2d at 1270. The California

Supreme Court's analysis focused on "related" and distinguished between logical and causal relationships. *See, e.g.*, *id.* at 1274 ("[T]he term 'related' as it is commonly understood and used encompasses both logical and causal connections.").

The language relied upon by the Insurers in their motion more properly pertains to logical connections and is therefore not dispositive here. *See Impress Commc'ns Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 19-CV-9396, 2020 WL 6789044, at *6 (C.D. Cal. Oct. 16, 2020) (finding related and noting that, "[t]he putative lack of a causal connection does not erase the clear logical connection these errors share"), *aff'd*, No. 20-56203, 2021 WL 6101384 (9th Cir. Dec. 21, 2021); *Liberty Ins. Underwriters, Inc. v. Davies Lemmis Raphaely L. Corp.*, 708 Fed. App'x 374, 375 (9th Cir. 2017) ("[w]hile the underlying actions are not causally related, they are logically related to each other by the 'common purpose or plan'").

**2. Newport's Acts Are Causally Connected**

In reply, the Insurers swivel, arguing that Newport's pre and post August 31, 2018, conduct shares common facts, circumstances, situations and transactions. Dkt. 100 at 7–9. Because of that, Newport's acts were part of a common scheme, have a causal connection, and therefore are interrelated. *Id.* at 7–11.

At the hearing, the Insurers went further, arguing that beyond being interrelated, the allegations constitute the same conduct. Dkt. 108, hearing transcript at 7 & 35–39. Newport responded that causally connected is narrower than logically connected. Dkt. 108, hearing transcript at 12–13. A common plan or purpose evidences a logical connection and not a causal one. *Id.*

On this, the Insurers have the stronger argument. "[I]nterpretation of an insurance

policy is a question of law." *Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619, 627 (Cal. 1995), *as modified on denial of reh'g* (Oct. 26, 1995). A court must seek to give effect to the parties' mutual intention and "look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Id.* A court need "interpret the language in context, with regard to its intended function in the policy." *Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 326 P.3d 253, 259 (Cal. 2014).

The Primary Policy states, as relevant here, that Interrelated Wrongful Acts need to be "causally connected by reason of any . . . series of common facts, circumstances, situations, transactions, or events." Dkt. 59-3 at 8.

Newport is alleged to have issued earnings reports regarding investments in Motorskill. Prior to 2019, Newport allegedly issued the earnings reports based on allegedly inaccurate, written statements from Motorskill. After 2019, Newport allegedly continued to issue the earnings reports without receiving written statements. The alleged actor is the same (Newport); the alleged conduct is the same (reporting earnings based on deficient or faulty information regarding Motorskill). The alleged victims are the same (Plan participants) and the harm is therefore the same.

The Court finds that these allegations are causally connected by reason of a series of common facts, circumstances, situations, transactions, or events. Requiring "one thing directly causing another," as Newport argues the Court should, *see* dkt. 108, hearing transcript at 28, wouldn't give sufficient weight to the Primary Policy's inclusion of the modifier "series of common facts, circumstances, situations, transactions, or events."

Similarly, in *Reconstruction Experts, Inc. v. Associated Industries Insurance Co.*, relied upon by the Insurers, dkt. 93 at 18–19, the court found that a prior acts exclusion

barred coverage where related wrongful acts were "those with a 'common nexus' or causal connection." No. 25-CV-07872, 2025 WL 3030586, at *7–8 (C.D. Cal. Oct. 8, 2025). Like here, the complaint there detailed "one alleged cohesive scheme concocted and set in motion before December 31, 2021," the date listed in the prior acts exclusion. *Id.* at *6.

Moreover, Newport's cases don't require a different outcome. In *Davies Lemmis*, the Ninth Circuit found that "seven underlying actions for which [the insurer] provided [the insured] a defense all alleged that [the insured] had conflicts of interests . . . and that [the insured] drafted offering documents that included a material misrepresentation" were logically (not causally) related as part of a common purpose or plan. 708 Fed. App'x at 375. That case involved, however, a group of separate incidents: different plaintiffs alleging similar conduct by one wrongdoer over the course of several years. Here, there is one alleged plan: one group of plaintiffs alleging the same harms from repeated conduct by one alleged wrongdoer, for years. Importantly, the policy provision at issue there lacked language about a series of common facts or circumstances, reading only: "[c]laims alleging, based upon, arising out of or attributable to the same or related wrongful acts shall be treated as a single claim . . . ." *Liberty Ins. Underwriters, Inc. v. Davies Lemmis Raphaely L. Corp.*, 162 F. Supp. 3d 1068, 1070 (C.D. Cal. 2016), *aff'd,* 708 Fed. App'x 374 (9th Cir. 2017). So, the inquiry was different.[5]

Turning to the California caselaw, Newport's cases still don't require a different

[5] Moreover, the Ninth Circuit has not spoken decisively on this issue. In another unpublished Ninth Circuit opinion cited by the Insurers, dkt. 100 at 9, the Circuit found a causal relation where "suits were filed by two different sets of plaintiffs in two different fora under two different legal theories, [but] the common basis for those suits was the [insured's] business practice of permitting independent dealers to mark up [the insured's] loans." *WFS Fin., Inc. v. Progressive Cas. Ins. Co.*, 232 Fed. App'x 624, 625 (9th Cir. 2007). *See also* 9th Cir. Rule 36-3(a) ("Unpublished dispositions and orders of this Court are not precedent").

result. True, the *Bay Cities* court observed that, "[i]f an attorney's error causes one or more other errors, the result is a chain of causation that leads to *an* injury, that is, a single claim." 855 P.2d at 1271. But *Bay Cities* involved two discrete errors, not a years-long series (as alleged here). *Id.* And the *Bay Cities* policy language only included "related," not "causally connected" by reason of common facts, as here. *Bay Cities* is thus distinguishable.[6]

Because the Court finds that Newport's reporting pre-August 31, 2018, and post- is causally connected, these are Interrelated Wrongful Acts. They are thus barred from coverage by the Prior Acts Exclusion.

## II. Newport's Motion for Partial Summary Judgment Is Denied

Newport moves for partial summary judgment on two issues: (i) whether the Insurers waived their right to challenge the reasonableness of the amount and terms of Newport's settlement, and the settlement is reasonable as a matter of law; and (ii) whether the larger settlement rule applies to the parties' allocation dispute. Dkt. 59. The Insurers oppose. Dkt. 69.

Because the Court finds that the Prior Acts Exclusion bars coverage, it need not consider either of these issues. Newport's motion is therefore denied.

## III. The Sealing Motions Are Granted in Part and Denied in Part

The parties filed motions to seal at dkts. 92, 97, 98, 99, and 109.

/ / /

[6] Newport additionally relies upon *McWethy v. California Insurance Guarantee Association*, No. G035992, 2006 WL 1793640 (Cal. Ct. App. June 30, 2006), *as modified on denial of rehearing* (July 26, 2006). That California case is unpublished. Therefore, it has no precedential value and may not be properly cited in this District. *See* Civil L.R. 3-4(d)(5) ("In any citation to a state court, citations must include either the official reports or any official regional reporting service"). Even if this Court were to look, the *McWethy* policy also lacks similar language: "[r]elated acts, errors or omissions shall be treated as a single claim." *McWethy*, 2006 WL 1793640, at *5 (emphasis omitted).

**A. Dkt. 92**

The Insurers move to seal materials on behalf of Newport. Dkt. 92. As required by the Local Rules, Newport filed a statement, dkt. 95, explaining that compelling reasons exist to seal Exhibit 4 (dkt. 92-4), Exhibit 5 (dkt. 92-5), Exhibit 6 (dkt. 92-6), and Exhibit 23 (dkt. 92-9).

The request to seal Exhibit 4 (dkt. 92-4) is granted in part. Wholesale requests to seal entire documents, however, are disfavored. The Court is not persuaded that compelling reasons exist to seal the entirety of Exhibit 4. As such, Newport is ordered to file a redacted copy on the Court's public docket within ten days of the date of this order. Newport may remove references to business practices and otherwise confidential materials.

The request to seal Exhibits 5 (dkt. 92-5), 6 (dkt. 92-6), and 23 (dkt. 92-9) are granted.

The Insurers also move to seal Exhibits 21 (dkt. 92-7) and 22 (dkt. 92-8). Newport doesn't oppose the public filing of those documents. Dkt. 95 at 2. As such, the Insurers' request to seal Exhibits 21 (dkt. 92-7) and 22 (dkt. 92-8) is denied. The Insurers must refile those documents on the Court's public docket within ten days of the date of this order.

The Insurers also filed unredacted versions of their motion for summary judgment (dkt. 92-10), the declaration of Jung H. Park in support of the Insurers' motion (dkt. 92-11), and Exhibit 1 (92-1) under seal. Newport doesn't address these materials in its statement in support of sealing. Accordingly, Newport is ordered to file an updated statement within ten days of the filing date of this order, addressing the reasons for sealing these materials. Failure to file may result in the unsealing of the materials. *See* Civil L.R. 79-5(f)(3).

/ / /

**B. Dkt. 97**

Newport's request to seal portions of Exhibits 18 (dkt. 97-2), 20 (dkt. 97-3), 21 (dkt. 97-4), and its unredacted opposition (dkt. 97-5) is granted, compelling reasons having been shown.

**C. Dkt. 98**

Newport, the filing party, moves to seal materials on behalf of Ironshore Indemnity Inc. (Ironshore) and Homesite Insurance Co. (Homesite), the designating parties. Dkt. 98. Ironshore and Homesite needed to file statements of the applicable legal standard and the reasons for keeping the materials under seal within seven days of the filing of Newport's motion to seal. *See* Civil L.R. 79-5(c)(1) & (f)(3). It's been more than seven days since the materials were filed on June 12, 2026. Neither Ironshore nor Homesite has filed a statement. Accordingly, Ironshore and Homesite are each ordered to provide statements within ten days of the filing date of this order. As noted, failure to do so may result in the unsealing of the materials. *See* Civil L.R. 79-5(f)(3).

**D. Dkt. 99**

On behalf of Newport, the Insurers move to seal portions of Exhibits 24 (dkt. 99-3), 25 (dkt. 99-4), 26 (dkt. 99-5), and the unredacted reply to their motion for summary judgment (dkt. 99-6).

Newport takes no position as to the sealing of Exhibits 25 (dkt. 99-4) and 26 (dkt. 99-5). *See* dkt. 102. As such, the request to seal those documents is denied. The Insurers are ordered to refile Exhibits 25 (dkt. 99-4) and 26 (dkt. 99-5) on the Court's public docket within ten days of the filing date of this order.

Regarding Exhibit 24 (dkt. 99-3) and portions of the Insurers' reply (dkt. 99-6),

Newport represents that these pertain to litigation risks and settlement strategies. Dkt. 102. Having reviewed, the Court finds that Newport has presented compelling reasons to seal the selected excerpts. The request to seal Exhibit 24 (dkt. 99-3) and the reply (dkt. 99-6) is granted.

**E. Dkt. 109**

Newport moves to seal Exhibit 4 (dkt. 109-2) and an unredacted copy of its supplemental briefing (dkt. 109-3). Compelling reasons having been shown, the request for sealing is granted.

**IV. Conclusion**

The Insurers' motion for summary judgment, dkt. 93, is granted. Newport's motion for partial summary judgment, dkt. 59, is denied. The related sealing motions are granted in part and denied in part.

**IT IS SO ORDERED.**

Dated: August 20, 2026

Alex G. Tse
United States Magistrate Judge